United States District Court
Southern District of Texas
**ENTERED**
March 26, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIM SPENCER, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-04166 |
| § | |
| SHELL EXPLORATION & § | |
| PRODUCTION COMPANY, § | |
| § | |
| Defendant. § | |

## ORDER

Before the Court are Plaintiff Tim Spencer's Complaint (Doc. #1), Defendant Shell Exploration and Production Company's Motion to Dismiss Plaintiff's Original Complaint (the "Motion") (Doc. #15), Plaintiff's Response (Doc. #19), and Defendant's Reply (Doc. #20). Having reviewed the parties' arguments and the applicable legal authorities, the Court grants the Motion. Doc. #15.

### I.   Background

This case arises from Plaintiff's request for a permanent religious accommodation to be exempt from his employer's COVID-19 vaccine policy. Doc. #1. Defendant hired Plaintiff in May 2008 as a mechanical advisor. *Id.* ¶ 13. From May 2008 to September 2021, Plaintiff worked at an offshore location in the Gulf of Mexico. *Id.* ¶ 13–14; Doc. #15, Ex. 4 at 1. In September 2021, Plaintiff began working on a project that required him to split his time working from home and at the Robert Training Center—an onshore location. Doc. #1 ¶¶ 14, 22; Doc. #19 at 5. However, Plaintiff's position at the Robert Training Center still carried the potential for

him to be sent offshore.[1] Doc. #19 at 6. On November 15, 2021, Defendant announced a mandatory vaccine policy, effective January 1, 2022, that required all offshore employees to get a COVID-19 vaccination. Doc. #1 ¶ 15; Doc. #15, Ex. 4 at 1. On December 16, 2021, Plaintiff applied for a permanent exemption from the vaccine requirement based on his religious beliefs. Doc. #1 ¶ 16. On January 14, 2022, Defendant denied Plaintiff's accommodation request on the basis that it would cause an undue hardship to allow Plaintiff to work offshore while unvaccinated. *Id.* ¶ 17. Defendant informed Plaintiff he could seek alternate employment within the company, but if Plaintiff failed to either secure another position or get vaccinated by May 2022, he would be terminated. *Id.* ¶ 17.

On April 4, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC Charge"), alleging that Defendant failed to grant his religious accommodation and discriminated against him based on his religion. *Id.* ¶ 18; Doc. #15, Ex. 1 at 1. On or about April 14, 2022, Plaintiff received several texts on his personal cellphone from Jeanie Bourgeois ("Bourgeois"), an employee in Defendant's health department, requesting that Plaintiff submit a "Shell Medical Certification Form." *Id.* ¶ 19. Plaintiff had previously asked that such messages be sent to his work email and not his personal phone. *Id.* On April 19, 2022, Plaintiff's supervisor, Anthony Bennet ("Bennet"), requested that Plaintiff

---

[1] The Court notes that, in his Response, Plaintiff included facts he did not plead—or at least plead with clarity—in his Complaint. In particular, Plaintiff claims in his Response that he began working at the Robert Training Center in September 2021, but remained labeled an "offshore" employee because his position carried the potential for working offshore. This was not pleaded in the Complaint. *Compare* Doc. #1 ¶ 13 ("Plaintiff continuously worked at an offshore site since his hire date.") *with* Doc. #19 at 5 ("Defendant hired Plaintiff in May 2008 and continuously worked at an offshore site . . . until September 2021," when he began a position that "required him to split his time between working from home and from the Robert Training Center onshore."). "New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." *Coach, Inc. v. Angela's Boutique*, No. CIV.A. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011). However, even considering these additional facts, the Court finds that Defendant's Motion should be granted.

produce a "Medical Release Form" by the end of the day, or a disciplinary letter would go in Plaintiff's file. *Id.* ¶ 20. Plaintiff produced the Medical Release Form as directed. *Id.* ¶ 21.

On April 21, 2022, Plaintiff was placed on a Personal Improvement Plan ("PIP") for "failure to communicate with Shell Medical." Doc. #1 ¶ 21; Doc. #15, Ex. 6 at 1. According to the PIP, Defendant "noted a pattern of underperformance" by Plaintiff in the following areas: (1) "failure to follow the company life saving rules and exhibit the company core value of honesty," (2) "a pattern in [Plaintiff's] failure to comply with medical documentation requirements," (3) "[f]ailure to meet expectations and deliverables," and (4) "[c]ollaborative, teamwork, and interpersonal behaviors." Doc. #15, Ex. 6 at 1. Plaintiff alleges that the PIP also initially accused him of violating Defendant's time-off policy by requesting time off to care for his elderly father-in-law, but that item was removed from the PIP. Doc. #1 ¶ 21.

On May 3, 2022, Plaintiff was informed he could continue working onshore at the Robert Training Center for another sixty days with pay. *Id.* ¶ 22. However, Defendant told Plaintiff he would be terminated on July 16, 2022, if he failed to get vaccinated or be selected for another onshore position. *Id.* On May 5, 2022, Plaintiff amended the EEOC Charge to reflect the May 3 update. Doc. #15, Ex. 2. Plaintiff does not allege he was ever terminated. On December 1, 2022, Plaintiff filed the Complaint, asserting religious discrimination and retaliation claims against Defendant under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* ¶¶ 24–36. On April 19, 2023, Defendant moved to dismiss each of Plaintiff's claims. Doc. #15.

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Hous. Indep. Sch.*

3

*Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663. "Significantly, a complaint may proceed even if 'recovery is very remote and unlikely,' so long as the alleged facts 'raise a right to relief above the speculative level.'" *Littell*, 864 F.3d at 622 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). The Court takes "the well-pleaded factual allegations in the complaint as true" but does "not credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Furthermore, courts may "consider documents attached to the Rule 12(b)(6) motion 'that are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Allen v. Hays*, 812 F. App'x 185, 189 (5th Cir. 2020) (quoting *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010)).

**III.    Analysis**

    **a.    Religious Discrimination**

Defendant moves to dismiss Plaintiff's Title VII religious discrimination claim because the Complaint alleges that Defendant provided Plaintiff a legally sufficient alternative accommodation. Doc. #15 at 12–16. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). To establish a religious discrimination claim under Title VII, Plaintiff must show that (1) he had a

4

"bona fide religious belief," (2) his "belief conflicted with a requirement of [his] employment," (3) his "employer was informed of [his] belief," and (4) he "suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (internal quotations and citation omitted).

Defendant argues it provided Plaintiff with a sufficient alternative accommodation by giving him time to find another position within the company that was exempt from the vaccine mandate. Doc. #15 at 13–15. "Title VII does not restrict an employer to only those means of accommodation that are preferred by the employee." *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 501 (5th Cir. 2001). "Once an employer has established that it offered a reasonable accommodation, even if that alternative is not the employee's preference, it has satisfied its obligation under Title VII as a matter of law." *Horvath v. City of Leander*, 946 F.3d 787, 791 (5th Cir. 2020). "Accommodation can take place in two fundamental ways: (1) an employee can be accommodated in his or her current position by changing the working conditions, or (2) the employer can offer to let the employee transfer to another reasonably comparable position where conflicts are less likely to arise." *Bruff*, 244 F.3d at 500.

In *Bruff*, the plaintiff was a counselor who requested a religious accommodation from her employer that would allow her to refrain from counseling patients on topics that conflicted with her religious beliefs. *Id.* at 497. The employer determined that the requested accommodation would pose an undue hardship and offered the plaintiff three options: "(1) reconsider her request for accommodation; (2) request a transfer to another position or department in which conflict of care issues were less likely to occur; or (3) resign her position. If she decided to request a transfer, she would be given 30 days to secure another position before she would be terminated." *Id.* The plaintiff applied for another position, but an "an applicant with superior credentials was

selected." *Id.* The plaintiff did not apply to any other positions, and when the 30-day period lapsed, she was terminated. *Id.* at 499. The Fifth Circuit found that, as a matter of law, the plaintiff's religious discrimination claim should be dismissed because the employer's "offer to give [her] 30 days to transfer to another position where conflict of care issues were less likely to arise was beyond peradventure a reasonable accommodation." *Id.* at 503.

Here, Plaintiff requested a permanent exemption from having to obtain the COVID-19 vaccination based on his religious beliefs. Doc. #1 ¶ 16. According to the facts alleged in the Complaint, Plaintiff was ultimately given from January 14, 2022, to July 16, 2022, to find an alternative position within the company that was not bound by the vaccine mandate. *Id.* ¶¶ 17, 22. Under *Bruff*, which held that granting an employee thirty days to seek a transfer was a sufficient accommodation, Defendant granting Plaintiff approximately seven months to find an alternative position within the company was a reasonable accommodation under Title VII. *See* 244 F.3d at 500. Thus, even assuming Plaintiff has sufficiently alleged all the elements of a religious discrimination claim, Plaintiff alleged facts that establish Defendant granted him a reasonable accommodation under Title VII. And offering a "a reasonable accommodation, even if that alternative is not the employee's preference," satisfies an employer's "obligation under Title VII as a matter of law." *Horvath*, 946 F.3d at 791.

Plaintiff avers that Defendant did not offer a legally sufficient alternative accommodation because, "even after [Plaintiff] found a position with [Shell Pipeline Company] offshore and was granted a religious accommodation, Defendant continued to threaten him with termination if he did not receive the vaccination or be selected for another position." Doc. #19 at 9. However, in the Complaint, Plaintiff does not allege that he found a position with Shell Pipeline Company ("SPLC"), or that he secured any other alternative position. *See* Doc. #1. Rather, Plaintiff

6

alleges that he continued working at the Robert Training Center and was told that he would be terminated on July 16, 2022, if he failed to secure another position. *Id.* ¶ 22. According to documents attached to the Response, Plaintiff began working for SPLC on July 10, 2022. Doc. #19, Ex. 1 at 2. Plaintiff does not allege, either in the Complaint or his Response, that he was ever terminated. *See* Doc. Nos. 1, 19. "New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." *Coach, Inc. v. Angela's Boutique*, No. CIV.A. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011). Thus, the Court finds that Plaintiff's arguments concerning his allegedly new position at SPLC do not remedy the fact that, according to the facts alleged in the Complaint, Defendant granted Plaintiff a reasonable accommodation under Title VII. Accordingly, Plaintiff's religious discrimination claim is dismissed.

### b. Retaliation

Next, Defendant moves to dismiss Plaintiff's Title VII retaliation claim because he has not plausibly alleged causation or an adverse employment action. Doc. #15 at 17–20. "Separate from a religious discrimination claim, Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice that violates Title VII." *Davis*, 765 F.3d at 489 (citing 42. U.S.C. § 2000e-3(a)). In order to a establish a "prima facie case of Title VII retaliation, a plaintiff must show '(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *Id.* at 489–90 (quoting *Ikossi–Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir.2009)).

Plaintiff alleges, and Defendant does not challenge, that he engaged in a protected activity by filing the EEOC Charge. Doc. #1 ¶ 29. Moreover, Plaintiff alleges that he suffered

adverse employment actions when: (1) Defendant gave Plaintiff a timeline by which to get vaccinated or secure an alternate position within the company to avoid termination, (2) Bourgeois sent messages to Plaintiff's personal cellphone to submit a Medical Certification Form, (3) Bennet reprimanded Plaintiff, (4) Bennet threatened to put a disciplinary letter in Plaintiff's file if Plaintiff did not produce a Medical Release Form, and (5) Defendant placed Plaintiff on a PIP. *Id.* ¶¶ 18–23, 30; *see also* Doc. #19 at 12. Defendant has moved for dismissal based on Plaintiff's failure to sufficiently allege either the causation or adverse employment action elements of his retaliation claim, which the Court addresses in turn. Doc. #15 at 17–20.

### 1. Causation

Defendant argues that Plaintiff has not plausibly alleged a causal nexus between filing the EEOC Charge and being given a timeline by which to get vaccinated or find an alternative position. Doc. #15 at 17–18. "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Moreover, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003).

Plaintiff alleges that on January 14, 2022, Defendant informed him that he had until May 2022 to secure another position within the company that was exempt from the vaccine mandate to avoid being terminated. Doc. #1 ¶ 17. Plaintiff then filed an EEOC Charge on April 4, 2022. *Id.* ¶ 18. According to the Complaint, the day after the EEOC Charge was filed, "Defendant retaliated against [Plaintiff] when it reprimanded him the next day, and then gave him a timeline

by which he had to get vaccinated to avoid termination not long after." *Id.* ¶ 18, 29–30. However, other than this statement, there are no specific factual allegations in the Complaint regarding events that took place on April 5, 2024. *See id.* Plaintiff alleges that on May 3, 2022, Defendant informed Plaintiff he could work at the Robert Training Center for "another [sixty] days with pay," but would be "terminated on July 16, 2022, if he failed to get vaccinated or be selected for another onshore position." *Id.* ¶ 22.

To the extent Plaintiff alleges that he was retaliated against by way of Defendant giving him "a timeline by which he had to get vaccinated to avoid termination," Plaintiff has failed to allege the causation element of his retaliation claim. Given that Plaintiff alleges Defendant informed him on January 14, 2022, that he would have to secure another position within the company or get vaccinated to avoid termination, Plaintiff cannot "demonstrate that [Defendant] knew about the [Plaintiff's] protected activity," because the EEOC Charge was filed months later. *See Manning*, 332 F.3d at 883.

In his Response, Plaintiff argues that he has plausibly alleged causation because Defendant retaliated against him by reprimanding him for requesting time off to care for his elderly relative, and threatened him with termination even after he found a position with SPLC. Doc. #19 at 13. As the Court has already noted, the Complaint is devoid of any allegations regarding Plaintiff's supposed new position with SPLC, and thus this cannot serve as a basis to avoid dismissal. *Supra* pp. 6–7. And to the extent Plaintiff bases his retaliation claim on Defendant reprimanding him for requesting time off, the Court has determined this is not a plausible allegation of an "adverse employment action." *Infra* pp. 11–12. Thus, the Court finds that Plaintiff has not plausibly alleged causation to the extent his retaliation claim is based on Defendant giving him a timeline to get vaccinated or seek an alternative position.

### 2. Adverse Employment Action

Defendant argues that Plaintiff has not plausibly alleged an adverse employment action. Doc. #15 at 18–19. In the retaliation context, an adverse employment action must be "materially adverse" to a reasonable employee, which "requires a showing that the challenged conduct 'well might have dissuaded a reasonable worker from [engaging in the protected activity].'" *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 869 (S.D. Tex. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Plaintiff points to several supposed retaliatory actions. First, Plaintiff alleges that on April 14, 2022, Bourgeois sent several messages to his personal cellphone requesting that he submit a Medical Certification Form. Doc. #1 ¶ 19. Second, Plaintiff alleges that he was reprimanded by his supervisor, Bennet, for requesting time off to care for his elderly father-in-law. Doc. #1 ¶ 21; Doc. #19 at 12. Third, Plaintiff alleges that on April 19, 2022, Bennet informed Plaintiff that if he did not produce a Medical Release Form by the end of the day, a disciplinary letter would go into his file. Doc. #1 ¶ 19. Fourth, Plaintiff alleges that Defendant put him on a PIP.[2] *Id.* ¶ 21. The Court will address each alleged adverse employment action in turn.

#### i. Text Messages

"'Petty slights, minor annoyances, and simple lack of good manners' are not actionable retaliatory conduct that would dissuade a reasonable employee from making a charge of discrimination." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 863 (S.D. Tex. 2010) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)). Plaintiff alleges that on

---

[2] Plaintiff also alleges that he was subjected to an adverse employment action because, "even after [he] complied with the alternate accommodation [Defendant] purported to offer by finding a position that should have been considered onshore, Defendant continued to threaten him with termination." Doc. #19 at 12. As the Court has noted, these facts are not alleged in the Complaint and thus cannot save Plaintiff's claim from Rule 12(b)(6) dismissal. *Supra* pp. 6–7.

April 14, 2022, Bourgeois sent several messages to his personal cellphone requesting that he submit a Medical Certification Form, even though Plaintiff had previously asked that such messages be sent to his work email. Doc. #1 ¶ 19. But this is no more than a "minor annoyance" and is not an adverse employment action that can serve as the basis of a Title VII retaliation claim. *See Lopez*, 684 F. Supp. 2d at 894 ("Requiring Plaintiff to submit updated medical information . . . [was] in the category of 'petty slights, minor annoyances, and simple lack of good manners,' which was not materially adverse and would not have dissuaded a reasonable employee from making or supporting a charge of discrimination.").

### ii. Bennet's Reprimand and Threat of Disciplinary Letter

The Fifth Circuit has held that "allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008); *see also Perez v. Brennan*, No. 1:17-CV-00043, 2017 WL 5534244, at *5 (S.D. Tex. Nov. 17, 2017), *aff'd*, 766 F. App"x 61 (5th Cir. 2019). Even "[w]ritten reprimands or warnings . . . generally are not adverse employment actions, particularly when they are issued in response to work-rule violations and do not dissuade the employee from pursuing complaints." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. 2015). Moreover, "[t]hreats of retaliation that do not significantly alter conditions of employment are generally not enough for a prima facie Title VII case." *Id.* (granting summary judgment and dismissing the plaintiff's retaliation claim because she had "not identified or presented any evidence showing that" her employer's threats "significantly altered the conditions of her employment").

Plaintiff alleges that Bennet "initially accused Plaintiff of violating [Defendant's] time-off policy when he requested a week off to care for his elderly father-in-law. It was only after a

lengthy conversation that Bennet finally agreed to remove that item from his [PIP]." Doc. #1 ¶ 21. Moreover, Plaintiff alleges that Bennet "requested a Medical Release Form, stating that if he did not produce it by the end of the day, a disciplinary letter would go into his file." *Id.* ¶ 20. Notably, Plaintiff does not allege that either of these acts, which essentially amount to threats or verbal reprimands, altered the conditions of his employment. Thus, the Court finds that Bennet's alleged reprimand after Plaintiff requested time off and threat to file a disciplinary letter if Plaintiff failed to produce a Medical Release Form did not constitute "adverse employment actions" under Title VII. *See Perez*, 2017 WL 5534244, at *6 (dismissing the plaintiff's retaliation claim under Rule 12(b)(6) to the extent the plaintiff claimed a "letter of warning" was an adverse employment action because it was "analogous to the 'verbal reprimands' that the Fifth Circuit has held not to be adverse").

### iii. Personal Improvement Plan

"[W]ritten warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity." *Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015) (affirming summary judgment as to the plaintiff's retaliation claim to the extent he argued that being placed on two PIPs amounted to adverse employment actions because "[t]he record demonstrates colorable grounds" existed for the PIPs).

Here, Plaintiff has alleged that, even though he complied with Bennet's request to produce a Medical Release Form and "[t]here are no company guidelines mandating that Plaintiff had to submit the medical form by a certain date," he was placed on a PIP for "failure to communicate with Shell Medical." Doc. #1 ¶¶ 20–21. But Defendant outlines several grounds for placing Plaintiff on a PIP: (1) "failure to follow the company life saving rules and exhibit the

12

company core value of honesty," (2) "a pattern in [Plaintiff's] failure to comply with medical documentation requirements," (3) "[f]ailure to meet expectations and deliverables," and (4) "[c]ollaborative, teamwork, and interpersonal behaviors." Doc. #15, Ex. 6 at 1. Plaintiff does not address the PIP's various grounds in his Complaint or Response. *See* Doc. Nos. 1, 19. Moreover, Plaintiff "continued to engage in protected activity after being placed on the PIP" by amending his EEOC Charge on May 5, 2022. Doc. #15, Ex. 2 at 1; *see Finch v. City of San Antonio*, No. SA-15-CV-521-XR, 2016 WL 4919967, at *8 (W.D. Tex. Sept. 13, 2016) (holding that the plaintiff's placement on a PIP was not a materially adverse employment action because colorable grounds existed for the PIP and he continued to engage in protected activity).

Thus, given that Plaintiff does not plausibly allege that no colorable grounds existed for the PIP and he continued to engage in protected activity, Plaintiff has not sufficiently alleged that the PIP is a materially adverse employment action. *See Jackson*, 601 F. App'x at 286. The retaliation claim must therefore be dismissed.

### IV. Conclusion

In conclusion, the Court finds that plaintiff has failed to state a claim against Defendant for either religious discrimination or retaliation under Title VII. Accordingly, Defendant's Motion is hereby GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

It is so ORDERED.

__MAR 2 5 2024__
Date

_____
The Honorable Alfred H. Bennett
United States District Judge